**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| SHANE MUNRO, Individually and For Others Similarly Situated,<br><br>v.<br><br>DOC'S REVERSE UNITS AND RENTAL TOOLS, INC. | Case No. 4:23-cv-00046<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Shane Munro ("Munro") brings this collective action lawsuit to recover unpaid wages and other damages from Doc's Reverse Units and Rental Tools, Inc. ("Doc's Reverse").

2. Munro worked for Doc's Reverse as a Lay Down Machine Operator in Texas and New Mexico.

3. Like the Putative Class Members (defined below), Munro regularly worked more than 40 hours a week.

4. But Doc's Reverse did not pay Munro and the Putative Class Members overtime when they worked over 40 hours in a week.

5. Instead, Doc's Reverse paid Munro and the Putative Class Members what it called a (nominal) base "salary" plus a flat amount for each day worked on a jobsite (a "day rate"), regardless of the number of hours they worked in a week (Doc's Reverse's "'salary' plus day rate pay scheme").

6. In other words, Doc's Reverse purported to pay Munro and the Putative Class Members a "minimum guarantee plus extras," as opposed to a true salary.

7. But Munro's and the Putative Class Members' purported weekly "salary" bears no reasonable relationship to the amount they typically earned in a normal workweek.

8. Doc's Reverse pays Munro and the Putative Class Members under its uniform, illegal "salary" plus day rate pay scheme regardless of any individualized factors.

9. Indeed, Doc's Reverse uniformly misclassified Munro and the Putative Class Members as exempt from overtime.

10. But Doc's Reverse never paid Munro and the Putative Class Members on a "salary basis" as required for any relevant overtime exemption.

11. Doc's Reverse's uniform "salary" plus day rate pay scheme violates the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA") by depriving Munro and the Putative Class Members of overtime wages at 1.5 times their regular rates of pay for all hours worked after 40 in a week.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over Doc's Reverse because Doc's Reverse is a Texas corporation.

15. Venue is proper because Doc's Reverse is headquartered in Monahans, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Munro worked for Doc's Reverse as a Lay Down Machine Operator in Ward County, Texas and Orla, New Mexico from approximately September 2021 until March 2022.

17. Throughout his employment, Doc's Reverse paid Munro under its uniform, illegal "salary" plus day rate pay scheme.

18. Munro's written consent is attached as **Exhibit 1**.

19. Munro brings this class and collective action on behalf of himself and all other similarly situated Doc's Reverse employees who Doc's Reverse paid under its illegal "salary" plus day rate pay scheme.

20. Doc's Reverse paid each of these employees a nominal base "salary" plus a flat amount for each day they worked at a jobsite and failed to pay them overtime when they worked more than 40 hours in a week in violation of the FLSA and NMMWA.

21. The FLSA Collective of similarly situated employees is defined as:

> **All Doc's Reverse employees who were paid a salary plus a day rate with no overtime at any time during the past 3 years ("FLSA Collective Members").**

22. Munro also seeks to represent such a class under the NMMWA pursuant to FED. R. CIV. P. 23.

23. The New Mexico Class of similarly situated employees is defined as:

> **All Doc's Reverse employees who were paid a salary plus a day rate with no overtime while working in New Mexico at any time during the past 3 years ("New Mexico Class Members").**

24. The FLSA Collective Members and New Mexico Class Members are collectively referred to as the "Putative Class Members."

25. Doc's Reverse is a Texas corporation headquartered in Monahans, Texas.

26. Doc's Reverse can be served through its registered agent: **Larry L. Bryant, 2008 West Highway 80, Monahans, Texas 79756**, or wherever he may be found.

### FLSA COVERAGE

27. At all relevant times, Doc's Reverse was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. At all relevant times, Doc's Reverse was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29. At all relevant times, Doc's Reverse was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, utility locating equipment, and personal protective equipment—that have been moved in or produced for commerce.

30. At all relevant times, Doc's Reverse has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

31. At all relevant times, the Putative Class Members were Doc's Reverse's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

32. At all relevant times, the Putative Class Members were engaged in commerce or in the production of goods for commerce.

33. Doc's Reverse uniformly paid the Putative Class Members under its illegal "salary" plus day rate pay scheme.

34. Doc's Reverse applied its illegal "salary" plus day rate pay scheme to the Putative Class Members regardless of any alleged individualized factors, such as specific job title, client, or geographic location.

35. As a result of Doc's Reverse's uniform "salary" plus day rate pay scheme, the Putative Class Members (which, as noted above, include Munro) did not receive premium overtime wages when they worked more than 40 hours in a workweek.

36. Doc's Reverse's uniform "salary" plus day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

37. Doc's Reverse bills itself as an "oilfield fishing & rental tools company."[1]

38. To meet its business objectives, Doc's Reverse hires workers, like the Putative Class Members, and "staffs" them to its clients.

39. Munro and the Putative Class Members regularly work more than 40 hours a week.

40. But Doc's Reverse does not pay Munro and the Putative Class Members overtime wages when they work more than 40 hours a week.

41. Instead, Doc's Reverse uniformly pays Munro and the Putative Class Members under its illegal "salary" plus day rate pay scheme.

42. Thus, Doc's Reverse purports to pay Munro and the Putative Class Members a "minimum guarantee plus extras."

43. But the purported "minimum guarantee"/base "salary" bears no reasonable relationship to the amount they typically earned in a week.

44. While exact job titles and job duties may differ, Munro and the Putative Class Members are subjected to the same or similar illegal pay practice for similar work.

45. For example, as a Lay Down Machine Operator, Munro's primary duty consisted of operating ditching equipment, cleaning blowout preventers ("BOPs"), and performing necessary repairs to this equipment in accordance with Doc's Reverse's policies, procedures, and protocols.

46. Throughout his employment, Munro typically worked at least 11 hours a day for 5 to 6 days a week (or 55 to 66+ hours a week).

47. Doc's Reverse set Munro's schedule.

48. Munro worked as directed by Doc's Reverse.

---

[1] https://docsreverseunits.com/ (last visited November 22, 2023).

5

49. Despite knowing Munro regularly worked overtime, Doc's Reverse did not pay him overtime wages.

50. Instead, Doc's Reverse paid Munro under its illegal "salary" plus day rate pay scheme.

51. As applied to Munro, this meant Doc's Reverse paid a nominal base "salary" of approximately $925 each week plus a day rate of $300 a day when Munro worked on a jobsite, regardless of the number of hours he worked that day (or that workweek).

52. Doc's Reverse did not pay Munto overtime when he worked more than 40 hours in a workweek.

53. For example, during the two-week pay period ending on October 2, 2021, Munro worked 11 days, 10 of which were on job sites.

54. Doc's Reverse paid Munro his nominal base "salary" (of approximately $925/week) plus a day rate ($300/day) for each day he worked on a jobsite:



55. Like Munro, the Putative Class Members typically work at least 11 hours a day for 5 to 6 days a week (or 55 to 66+ hours a week).

56. And like Munro, the Putative Class Members work in accordance with the schedule set by Doc's Reverse.

6

57.     Despite knowing the Putative Class Members regularly work overtime, Doc's Reverse does not pay them overtime wages.

58.     Instead, Doc's Reverse uniformly pays the Putative Class Members according to the same illegal "salary" plus day rate pay scheme it imposed on Munro.

59.     Doc's Reverse never paid Munro and the Putative Class Members on a "salary basis."

60.     Doc's Reverse's alleged "salary" is subject to reduction, and is in fact reduced, based on the quality or quantity worked.

61.     For example, during the two-week pay period ending on September 4, 2023,[2] Munro only worked 4 days (none of which were at a jobsite).

62.     But Doc's Reverse only paid him the daily equivalent of his "salary" for the four days he actually worked.



63.     In other words, Doc's Reverse subjected Munro's purported base "salary" to reductions based on the quantity of work he performed that week (his actual days worked).

---

[2] Notably, this was **not** Munro's last workweek or pay period working for Doc's Reverse. In fact, he received another paycheck the following pay period.

64. Even if Doc's Reverse had paid Munro and the Putative Class Members a guaranteed weekly salary, the "salary" would not bear a "reasonable relationship" to their actual weekly earnings. *See* 29 C.F.R. § 541.604(b).

65. For example, Doc's Reverse says Munro's "salary" was approximately $925/week.

66. But because Doc's Reverse also paid Munro a day rate ($300) for each day he worked at a jobsite, his actual earnings did not bear a "reasonable relationship" to his alleged "salary."

67. For example, during the two-week pay period ending on November 13, 2021, Munro worked 10.5 days, 7 of which were at a jobsite.

68. Due to Doc's Reverse's illegal "salary" plus day rate pay scheme, Munro's *actual* earnings during that two-week pay period (approximately $3,950) were more than 2 times his purposed base "salary" (approximately $1,850 for the two-week pay period):



69. In other words, Munro's purported base "salary" bore no "reasonable relationship" to his actual earnings.

70. Thus, Doc's Reverse never paid Munro and the Putative Class Members on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

8

71. Because Doc's Reverse uniformly fails to pay Munro and the Putative Class Members on a "salary basis," they are all non-exempt employees entitled to overtime wages.

72. In addition to failing to pay Munro and the Putative Class Members on a "salary basis," these employees also primarily perform non-exempt job duties.

73. Munro's and the Putative Class Members' primary duties do not include supervising other Doc's Reverse employees.

74. Munro's and the Putative Class Members' primary duties are not management.

75. Munro's and the Putative Class Members' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

76. Rather, Munro's and the Putative Class Members' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by Doc's Reverse.

77. Virtually every job function is predetermined by Doc's Reverse, including the tools and equipment used, the schedule of work, and related work duties.

78. In sum, Munro and the Putative Class Members are non-exempt employees entitled to overtime wages.

79. But Doc's Reverse does not pay Munro and the Putative Class Members overtime in willful violation of the FLSA and NMMWA.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

80. Munro incorporates all other paragraphs by reference.

81. Like Munro, the Putative Class Members are uniformly victimized by Doc's Reverse's uniform, illegal "salary" plus day rate pay scheme.

82. Other Putative Class Members worked with Munro and indicated they were paid in the same manner, performed similar work, and were subject to Doc's Reverse's same illegal "salary" plus day rate pay scheme.

83. Based on his experience with Doc's Reverse, Munro is aware Doc's Reverse's illegal "salary" plus day rate pay scheme was imposed on the Putative Class Members.

84. The Putative Class Members are similarly situated in the most relevant respects.

85. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

86. Any relevant exemption defenses would require Doc's Reverse to pay the Putative Class Members on a "salary basis."

87. Because Doc's Reverse's illegal "salary" plus day rate pay scheme fails the "salary basis" test, the specific job duties performed by the Putative Class Members are largely irrelevant.

88. The only *relevant* inquiries are whether the Putative Class Members were paid a base "salary" plus a day rate with no overtime wages for workweeks longer than 40 hours, and whether that uniform pay plan violates the "salary basis" test.

89. Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

90. Rather, Doc's Reverse's uniform, illegal "salary" plus day rate pay scheme renders Munro and the other Putative Class Members similarly situated for the purposes of determining their right to overtime pay.

91. Doc's Reverse's records reflect the number of days and/or hours worked each week by the Putative Class Members.

92. Doc's Reverse's records also how, and what, it paid the Putative Class Members for the time they worked.

93. The backwages owed to Munro and the other Putative Class Members can therefore be calculated using the same formula applied to the same records.

94. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Doc's Reverse's records, and there is no detraction from the common nucleus of liability facts.

95. Therefore, the issue of damages does not preclude class or collective treatment.

96. Munro's experiences are therefore typical of the experiences of the Putative Class Members.

97. Munro has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

98. Like each Putative Class Member, Munro has an interest in obtaining the unpaid wages owed under federal and New Mexico law.

99. Munro and his counsel will fairly and adequately protect the interests of the Putative Class Members.

100. Munro retained counsel with significant experience in handling complex class and collective action litigation.

101. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

102. Absent this class and collective action, many Putative Class Members will not obtain redress for their injuries, and Doc's Reverse will reap the unjust benefits of violating the FLSA and NMMWA.

103. Further, even if some of the Putative Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

104. Indeed, the multiplicity of actions would create a hardship for the Putative Class Members, the Court, and Doc's Reverse.

105. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

106. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

107. Among the common questions of law and fact are:

   a. Whether the Putative Class Members are non-exempt employees entitled to overtime wages;

   b. Whether Doc's Reverse's "salary" plus day rate pay scheme satisfies the "salary basis" test;

   c. Whether Doc's Reverse's decision to misclassify the Putative Class Members as exempt from overtime was made in good faith;

   d. Whether Doc's Reverse's decision not to pay the Putative Class Members overtime was made in good faith;

   e. Whether Doc's Reverse's NMMWA violations resulted from a continuing course of conduct; and

   f. Whether Doc's Reverse's FLSA violations were willful.

108. Munro knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

109. As part of its regular business practices, Doc's Reverse intentionally, willfully, and repeatedly violated the FLSA and NMMWA with respect to the Putative Class Members.

110. Doc's Reverse's illegal "salary" plus day rate pay scheme deprived Munro and the other Putative Class Members of the overtime wages they are owed under federal law.

111. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112. The Putative Class Members are known to Doc's Reverse, are readily identifiable, and can be located through Doc's Reverse's business and personnel records.

### DOC'S REVERSE'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND NMMWA

113. Munro incorporates all other paragraphs by reference.

114. Doc's Reverse knew it was subject to the FLSA's and NMMWA's respective overtime provisions.

115. Doc's Reverse knew the FLSA and NMMWA required it to pay non-exempt employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a week.

116. Doc's Reverse knew each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because Doc's Reverse required them to report their hours worked to Doc's Reverse.

117. Doc's Reverse knew it paid the Putative Class Members a base "salary."

118. Doc's Reverse knew it paid the Putative Class Members a day rate for each day they actually worked at a jobsite.

119. Doc's Reverse knew it did not pay the Putative Class Members on a "salary basis."

120. Doc's Reverse knew it did not pay the Putative Class Members any guaranteed "salary" that was not subject to reduction based on the quantity or quality of work.

121. Doc's Reverse knew it subjected the Putative Class Members' purported base "salaries" to deductions based on the quantity or quality of work.

122. Doc's Reverse knew it deducted from the Putative Class Members' purported base "salaries" based on the quantity or quality of work.

123. Doc's Reverse knew that any base "salary" it purported to have paid the Putative Class Members was not "reasonably related" to their actual earnings.

124. Thus, Doc's Reverse knew its "salary" plus day rate pay scheme did not satisfy the "salary basis" test.

125. Doc's Reverse knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to the Putative Class Members.

126. Doc's Reverse knew the Putative Class Members' primary duties did not include supervising other Doc's Reverse employees.

127. Doc's Reverse knew the Putative Class Members' primary duties were not management.

128. Doc's Reverse knew the Putative Class Members' primary duties did not require the exercise of independent judgment or discretion with respect to matters of significance.

129. Thus, Doc's Reverse knew the Putative Class Members primarily performed non-exempt work.

130. Nonetheless, Doc's Reverse uniformly misclassified the Putative Class Members as exempt and refused to pay them overtime.

131. Doc's Reverse's decision to misclassify the Putative Class Members as exempt employees was not reasonable, nor was it made in good faith.

132. Likewise, Doc's Reverse's failure to pay the Putative Class Members overtime was neither reasonable, nor was its decision not to pay these employees overtime made in good faith.

133. Doc's Reverse knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and NMMWA.

134. Doc's Reverse knowingly, willfully, and/or in reckless disregard carried out this illegal "salary" plus day rate pay scheme that systematically deprived the Putative Class Members of overtime wages in violation of the FLSA and NMMWA.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

135. Munro incorporates all other paragraphs by reference.

136. Munro brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

137. Doc's Reverse violated, and is violating, the FLSA by employing non-exempt employees (Munro and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

138. Doc's Reverse's unlawful conduct harmed Munro and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

139. Accordingly, Doc's Reverse owes Munro and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

140. Because Doc's Reverse knew, or showed reckless disregard for whether, its "salary" plus day rate pay scheme violated the FLSA, Doc's Reverse owes Munro and the other FLSA Collective Members these wages for at least the past 3 years.

141. Doc's Reverse is also liable to Munro and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

142. Finally, Munro and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
### (NEW MEXICO CLASS)

143. Munro incorporates all other paragraphs by reference.

144. Munro brings his NMMWA claims as a class action on behalf of himself and the other New Mexico Class Members pursuant to FED. R. CIV. P. 23.

145. Doc's Reverse's conduct violates the NMMWA. *See* N.M.S.A. §§ 50-4-20, *et seq.*

146. At all relevant times, Doc's Reverse has been an "employer" subject to, and within the meaning of, the NMMWA. *See* N.M.S.A. § 50-4-21(B).

147. At all relevant times, Doc's Reverse employed Munro and each New Mexico Class Member as covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

148. The NMMWA requires employers, like Doc's Reverse, to pay non-exempt employees, including Munro and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in any week. *See* N.M.S.A. § 50-4-22(D).

149. Munro and the other New Mexico Class Members are entitled to overtime pay under the NMMWA.

150. Doc's Reverse violated, and is violating, the NMMWA by employing non-exempt employees (Munro and the other New Mexico Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a 7-day week. *See* N.M.S.A. § 50-4-22(D).

151. Doc's Reverse's unlawful conduct harmed Munro and the other New Mexico Class Members by depriving them of the premium overtime wages they are owed.

152. In violating the NMMWA, Doc's Reverse acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New Mexico law.

153. Doc's Reverse's improper practices at issue were, and are, part of a continuing course of conduct, entitling Munro and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

154. Accordingly, Munro and the other New Mexico Class Members are entitled to recover their unpaid overtime wages in amount equal to 1.5 times their regular rates of pay for their hours worked over 40 in a 7-day week; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and all reasonable attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

## JURY DEMAND

155. Munro demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Munro, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

    c. An Order appointing Munro and his counsel to represent the interests of the Putative Class Members;

    d. An Order finding Doc's Reverse liable for unpaid wages due to Munro and the FLSA Collective Members owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

    i.    An Order finding Doc's Reverse liable to Munro and the New Mexico Class Members for all unpaid overtime wages owed under the NMMWA, plus damages equal to two times their unpaid wages;

    e.    A Judgment against Doc's Reverse awarding Munro and the Putative Class Members all their unpaid wages, liquidated damages, treble damages, and any other penalties available under the FLSA and NMMWA;

    f.    An Order awarding attorney's fees, costs, and expenses;

    g.    Pre- and post-judgment interest at the highest applicable rates; and

    h.    Such other and further relief as may be necessary and appropriate.

Dated: November 22, 2023.                  Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*
    Michael A. Josephson
    TX Bar No. 24014780
    Andrew W. Dunlap
    TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR MUNRO AND THE PUTATIVE CLASS MEMBERS**